**B. F. AVERY & SONS CO. v. GLENN, Collector of Internal Revenue (two cases).**

**Nos. 1775, 1845.**

District Court, W. D. Kentucky, at
Louisville.

Oct. 7, 1936.

John C. Doolan, Trabue, Doolan, Helm & Helm, and Andrew W. Duncan, Jr., all of Louisville, Ky., for plaintiff.

Robert H. Jackson, Asst. Atty. Gen., Andrew D. Sharpe and Donald J. Marran, Sp. Assts. to Atty. Gen., and Bunk Gardner, U. S. Atty., and Oldham Clarke, Asst. U. S. Atty., both of Louisville, Ky., for defendant.

HAMILTON, District Judge.

These actions are suits by the plaintiff, a Delaware corporation, against the defendant Collector of Internal Revenue for the District of Kentucky, seeking to recover from him documentary stamp taxes claimed to have been wrongfully paid by the plaintiff upon alleged transfers and rights to receive stock under section 723 (a), (c) of the Revenue Act of 1932, 47 Stat. 272, U.S.C.A. title 26, c. 7, § 902 (b). The sum sought to be recovered in case No. 1775 is $8,378.96, with interest from date of payment, and in No. 1845, $4,892.52, with interest from date of payment.

The plaintiff was organized under the laws of Delaware in 1932 with an authorized capital stock of 300,000 shares no par value, for the purpose of acquiring the assets and capital stock of the B. F. Avery & Sons, a Kentucky corporation with outstanding capital stock, preferred and common, of the aggregate par value of $5,286,-600, which was engaged in the manufacturing business at Louisville, Ky., and owned the plant and other assets used in its business, and also the capital stock, except 12 shares, of the B. F. Avery Plow Company, a Kentucky corporation. The old company became financially involved, requiring a corporate reorganization, and on December 6, 1932, for this purpose, the stockholders of the old corporation authorized and directed its corporate officers to organize the new corporation, plaintiff in this case, under the laws of Delaware, it to succeed the old in all particulars, acquiring its assets and assuming its liabilities, which was legally accomplished.

A part of the procedure to acquire the stock of the old corporation was to submit two alternative plans for the exchange of the old stock for the new; first, to issue to the owner of the old stock directly the new in exchange and have him immediately

assign it to a trustee; second, to issue the stock directly to a trustee in accordance with a trust indenture which provided for a holding and voting trust. The latter plan was recommended for the express purpose of reducing taxes.

The trustee was to issue and deliver to the consenting or depositing stockholder its trust certificates covering the new stock.

Article 2 of the trust indenture provided that the new corporation would make available for immediate issue 237,313 shares of its stock with an agreed value of $5 per share; 92,580 shares of this amount was to be issued in exchange for 23,145 shares of the old stock, first and second preferred; 29,721 shares exchanged for an equal number of shares of the old company's common stock; 12 shares for a like number of shares of the B. F. Avery Plow Company stock not owned by the old company; 115,000 shares to the Huber Manufacturing Company and bank creditors of the old company, these shares to be issued direct to the creditors or to the trustee, if so directed.

Article 10 of the trust agreement provided that all shares of stock issued by the old company should either be issued to the trustee upon the direction of the subscriber or upon issue thereof to the subscriber to be immediately assigned or transferred by him to the trustee, in either case to be held under the terms of the voting trust agreement.

In carrying out the reorganization, the new corporation set aside for immediate issue 122,313 shares to be exchanged for shares of the old company, both common and preferred, and 12 shares to be exchanged for 12 shares of the B. F. Avery Plow Company stock, not owned by the old company.

The trustee received direct for the old stockholders 94,474 shares and 80 shares issued to Kevil Investment Company, a creditor, and immediately assigned by the creditor to it. It also received direct 115,000 shares for the Huber Manufacturing Company and the bank creditors of the old company, but 27,759 shares set aside for stockholders of the old company by the new were not called for and these shares were not delivered to the trustee.

In order to acquire the assets of the old company, the new company also issued and delivered to the Fidelity & Columbia Trust Company of Louisville, Ky., as trustee for the creditors of the old company, series A notes maturing in three years of the aggregate face value of $1,201,500, and series B notes maturing in five years aggregating the face value of $1,201,500. The new company paid the documentary stamp taxes upon its original issue of stock levied by Act of June 6, 1932, c. 209, § 722 (a), (c), 47 Stat. 272, U.S.C.A. title 26, c. 7, § 902 (a) which taxes are not in controversy here.

The Commissioner of Internal Revenue ruled that, when the old company conveyed its assets to the new and stock was issued to the old stockholders in exchange for their stock and to the creditors in partial settlement of their debts and at their direction issued to the trustee, a taxable transfer occurred and taxes became due on 209,474 shares of stock at 4 cents a share, or $8,378.96. The tax was not levied on 27,759 shares set aside for old stockholders but not issued to them, nor on 80 shares issued to the Kevil Investment Company, a creditor.

The Commissioner ruled on the same state of facts that when the stockholders of the old corporation consented to and directed the transfer of its assets to the new corporation in exchange for stock and mortgage collateral trust notes, a taxable transaction occurred and taxes became due on 122,313 shares of stock at 4 cents a share, or $4,892.52. No tax was levied in this determination on the 115,000 shares issued to creditors and deposited with the trustee.

On paper there was only one transaction, but the defendant insists that in fact two taxable transactions took place; first, the creditors and stockholders of the old corporation transferred or assigned the new stock to the trustee, which resulted in an exchange of the legal title in the stock for trustee certificates; second, that the old corporation received 122,313 shares of stock of the new corporation for its assets, which it transferred to its stockholders.

It may be said in passing that if the old corporation received the 122,313 shares for its assets, it received in addition thereto the 115,000 shares issued to its creditors, and if all the shares in the second transaction are taxable, less tax has been collected from the plaintiff than it owes.

Considering the taxability of the first transaction, the Revenue Act of 1932, 47 Stat. 272, 26 U.S.C.A. c. 7, § 902 (b), makes the tax applicable on: "All sales, or agreements to sell, or memoranda of sales

or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale."

The above statute is a revenue measure and covers every transaction where the right to be or become a shareholder of a corporation, or to receive any certificate in its property, is surrendered by one and acquired by another. The reorganization agreement in part provided as follows: "All said shares of stock presently to be issued shall upon issue thereof become the property of the Trustee, where issued to it, or, where not so issued, shall be assigned and transferred to the Trustee, and the beneficial owners thereof agree that such stock shall be held by it as Trustee thereof for the period and upon the terms of the Voting Trust created in Article X of this Indenture. Transfers if required for this purpose shall be made upon all such certificates of stock so transferred and Trust Certificates shall be issued to all beneficial owners thereof by the Trustee of said Voting Trust."

Article X of the indenture creates the voting trust referred to; provides that the trustee shall be the voting trustee thereunder; fixes the term of the trust as five years from January 1, 1933; and concludes as follows: "The Trustee shall be entitled to exercise all the powers incident to full and complete ownership of all shares of stock assigned to it to be held under such Voting Trust, including the power to vote same, either in person or by proxy, at any corporate meeting of Avery stockholders, and in all other respects to exercise the right of such stockholders: Provided, however, that in discharging its said functions of Voting Trustee, the Trustee shall be guided and controlled, as to any vote given or action taken by it, by written directions given by the holders of a majority in amount of Voting Trust Certificates issued by the Trustee."

The stockholders of the new corporation simultaneously with their acquisition of its stock consented to its transfer to the trustee, and by this act divested themselves of the legal title to it. Such a transaction falls within the plain terms of the statute, unless within one of the statutory exemptions set up in the act. Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111.

The imposition of a tax on the transfer of the legal title to corporate shares has been a fruitful source of revenue since 1918, and in all Treasury regulations interpreting and construing such statutes, the Department has taxed "the transfer of stock to or by trustees." See: Article 34, Treasury Regulation 71.

The Congress has on numerous occasions amended the Revenue Act applicable to the tax on the transfer of stocks, and it has in some of the acts set up specific exemptions. One of these, found in the act here under consideration, provides: "That the tax shall not be imposed upon deliveries or transfers from a fiduciary to a nominee of such fiduciary, or from one nominee of such fiduciary to another, if such shares or certificates continue to be held by such nominee for the same purpose for which they would be held if retained by such fiduciary, or from the nominee to such fiduciary, but such deliveries or transfers shall be accompanied by a certificate setting forth the facts." 26 U. S.C.A. § 902 (b).

The Congress could have exempted transfers to a fiduciary if it had so elected, but, such not being in the statute, Courts are not at liberty to insert them.

The language of the above exemption tends to emphasize the intention of the Congress to exact a tax in every instance where there was a transfer of the legal title to the stock. The right to vote the stock of a corporation is one of importance and value, and the Congress could, prompted by every sense of justice, levy a tax when this right was taken from one and given to another.

The new corporation in the case at bar could not legally deliver its original shares to any one except a subscriber or his nominee, and the substance of the transaction here in question regardless of its form was the transfer of the original shares to the stockholders and creditors of the old corporation, and a transfer by them of legal title to the stock to the voting trustees. Bringing such a transaction within the transfer tax statute requires no strained statutory interpretation.

The plaintiff became indebted to the United States at the rate of 4 cents a share

on all the shares of stock issued by it to the voting trustee, and is therefore not entitled to recovery in action No. 1775.

Turning now to the second transaction, the Commissioner of Internal Revenue undertook to tax the number of shares of stock of the new company received by the old for its assets, and in fact delivered by it to its stockholders. Whatever shares were thus received were correctly taxed by the Commissioner. He found that 122,313 shares were received by the old corporation for its assets. He assumed that no shares could be issued to the old stockholders in exchange for their stock. His ruling is not a correct interpretation of the facts.

The new corporation wished to acquire not only the assets of the old, but also its stock. In article 1 of the trust indenture it is stated, in substance, that the new company acquired the assets in consideration of it paying the debts of the old corporation in full, or by assuming to pay them. The creditors of the old corporation were to be satisfied in part by the issuance to them of 115,000 shares of the stock of the new company, all of it to be trusteed for a period of five years, and $1,145,000 face value of its series A mortgage and collateral trust notes maturing in three years and $1,145,000 of series B mortgages and collateral trust notes maturing in five years.

Under Article 10, sections 883b-1 to 883b-3, Carroll's Kentucky Statutes, 1930 Edition, a corporation has the power to sell and convey all its property, privileges, rights, franchises, easements, rights of way, and all other property and property rights it may use or possess on the consent of the holders of not less than three-fourths of its capital stock. Under this statute, the consent of the required number of stockholders is imperative to make a sale. The consenting stockholder may, as a condition precedent, require the payment to him of money or property by the purchaser. In the case at bar the agreement to which the stockholders of the old corporation consented provided for the delivery to them of 92,580 shares of the capital stock of the new corporation in exchange for 23,145 shares of the old company's preferred stock; and 29,721 shares in exchange for an equal number of shares of its common stock. The old corporation lacked power to dispose of the stock of its stockholders, and the stockholders also lacked power to dispose of the assets of the corporation. The assumption that the old corporation received these shares of stock for it assets and in turn delivered them to its stockholders does not arise to the dignity of a legal fiction. The Raybestos Case, supra, so strongly relied on by the defendant, does not match the case at bar, if cases are to be decided on the matching principle. The levying of the tax by the Commissioner on the number of shares delivered by the new company to the stockholders of the old is not supported by the facts.

The old corporation did legally receive 115,000 shares of stock for its creditors, and in effect distributed these shares to them, and a tax liability accrued against the new corporation on these shares at the rate of 4 cents per share, or $4,600. The Commissioner determined the tax on the number of shares issued to the old stockholders and failed to tax the 115,000 shares received by creditors of the old. The plaintiff is entitled to receive in action No. 1845 the sum of $292.52, together with interest thereon from date of payment.

The plaintiff strongly urges and counsel has briefed with great skill and diligence the contention that no taxes are due on either of the transfers taxed by the Commissioner because there was no substantial change in ownership of either assets or stock. The facts do not support this contention. The Kentucky corporations went out of existence, surrendered all of their property of every kind and description to the Delaware corporation, 115,000 shares of new stock came in to exercise stockholders' rights not theretofore existing in the old. The old stockholder lost every vestige of control, both by the issue of new stock and by surrendering all voting rights to the voting trust.

The transfer of stock in the new corporation organized pursuant to the reorganization plan under which the old corporations were liquidated and their assets transferred to the new in part consideration of the issue of stock directly to the creditors of the old, fell within the transfer taxing statute. Compare United States v. Vortex Cup Company (C.C.A.) 84 F.(2d) 925.

The plaintiff relies on the case of United States v. Leach & Company (C.C.A.) 84 F.(2d) 908, in support of its contention that the transfer of stock of the new corporation to the trustee under the voting trust was nontaxable. The cited case shows a transfer to a nominee of a stockholder. There is a substantial difference between a nominee and a trustee. A nom-

inee is synonymous with an agent to receive property in futuro and one who represents and acts for his principal, and the principal is bound by what he does in the discharge of the agency. A trustee is not an agent, but a person in whom some estate, interest, or a power in or affecting property is vested for the benefit of another. A trustee contracts for himself; unless he is bound, no one is bound for he has no principal. The statute here involved expressly exempts from transfer taxes shares of stock transferred to or from a nominee or agent. It taxes such shares of stock transferred to or from a trustee. The Leach Case has no application to the case at bar.

Findings of fact, conclusions of law, and judgment will be prepared in accordance with this opinion.